IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| JOHN THORNBURG, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-06056-CV-SJ-ODS ) |
| OPEN DEALER EXCHANGE, LLC, d/b/a 700Credit, | ) ) ) |
| Defendant. | ) ) |

# ORDER AND OPINION DENYING OPEN DEALER EXCHANGE, LLC'S MOTION TO DISMISS

Pending is Open Dealer Exchange, LLC's ("ODE") Motion to Dismiss Third-party Defendant Trans Union LLC's Third-Party Counterclaims. Doc. #79.

## I. BACKGROUND

Plaintiff John Thornburg's amended complaint alleges ODE violated the Fair Credit Reporting Act. Doc. #20. Specifically, Thornburg alleges ODE "failed to follow reasonable procedures to assure maximum possible accuracy of the information [which was supplied by ODE, and about Thornburg] concerning the individual [Thornburg] about whom the report relates in violation of the [sic] 15 U.S.C. § 1681b(e) [sic]."[1] Doc. #20, at ¶ 47. Thornburg seeks certification of two classes of individuals related to an allegedly inaccurate "Chg-Off or Repo" code on a consumer report prepared by ODE.

---

[1] Paragraph 47 of Thornburg's amended complaint identifies the pertinent statute as 15 U.S.C. § 1681b(e). The amended complaint seeks certification of two classes of individuals for alleged violations of 15 U.S.C. § 1681e(b). 15 U.S.C. § 1681b(e) is entitled "[e]lection of consumer to be excluded from lists," and relates to a consumer's ability to elect to have information excluded from certain types of lists provided by a consumer reporting agency. 15 U.S.C. § 1681e(b) is entitled "[a]ccuracy of report," and states "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The parties understand Thornburg's claims are based on 15 U.S.C. § 1681e(b). *See* Doc. #80, at 2; Doc. #83, at 7.

After answering Thornburg's amended complaint, ODE filed a third-party complaint against third-party Defendant Trans Union LLC. Doc. #42. ODE alleges Trans Union breached the Reseller Service Agreement ("RSA"), which governs the parties' relationship and obligations. If inaccurate information about Thornburg was provided by ODE, ODE alleges Trans Union provided the inaccurate information, and therefore, Trans Union is liable to ODE for breach of contract. In response to ODE's allegations, Trans Union filed a counterclaim against ODE. Doc. #75. Trans Union asserts it did not report a "Chg-Off or Repo" code to ODE, and therefore, ODE breached the RSA and its obligations under the FCRA by adding inaccurate information to the ODE report about Thornburg. ODE's pending motion to dismiss argues Trans Union's counterclaims, which seek indemnification from ODE for Trans Union's defense of Thornburg's claims and any judgment in Thornburg's favor, are barred by the RSA's terms.

Several portions of the RSA are relevant to the pending motion. First, the agreement is governed by Illinois law. Doc. #70-8, at 8 (filed under seal). Second, with respect to ODE's responsibility, section I.J of the RSA states:

> Reseller shall comply with all federal, state and local statutes, regulation and rules applicable to it including, without limitation, the FCRA and all the procedures prescribed by TransUnion in the Policy, to verify the identity of End Users who will obtain Consumer Reports to make certain that such End Users are legitimate businesses, have a permissible purpose for obtaining credit reports, and are not Unauthorized Users, as such term is defined in the Policy. If, as a result of the verifications outlined in the Policy, the prospective End User is found to be an Unauthorized User, or is found to have no permissible purpose to obtain credit reports, Reseller shall not enter into a Service Agreement with such End User (or shall terminate its Service Agreement with such End User, as the case may be). Reseller further warrants that it will require by written contract with its End Users that such End Users comply with the same obligations of compliance with all laws. TransUnion reserves the right to terminate any End User at any time with or without notice.

Doc. #70-8, at 4. Finally, the "Indemnification and Limitation of Liability" section states:

> A. Reseller shall indemnify and hold TransUnion harmless from any and all claims, losses and damages, liability, and costs, including attorney's fees, against, or incurred by, Trans Union to the extent such claims, damages, liability and costs result directly or indirectly from either or both of the following: (a) any use of Consumer Reports in violation of applicable law or breach of this Agreement or where such use or receipt

2

> was as a result of Reseller or its End User's failure to comply with applicable law or any of term, restriction or obligation set forth herein or in the Policy; or (b) Reseller's breach of its obligations under this Agreement including, but not limited to, any breach which results in the non-permissible use of the Consumer Reports provided to Reseller, End User(s), or both, under this Agreement.  Reseller recognizes that TransUnion will suffer irreparable harm, and that monetary damages may be incalculable and/or inadequate in the event that Reseller retains TransUnion data in breach of this Agreement, and therefore, such breach shall be entitled to seek remedy by Injunctive relief, in addition to any and all other relief which may be available at law or at equity.
> B.  Except in the case of TransUnion's gross negligence, willful misconduct or violation of law applicable to the subject matter hereof, in no event shall TransUnion be liable to Reseller in any manner whatsoever for any loss or injury to Reseller resulting from TransUnion's obtaining or furnishing of consumer reports.  In no event shall TransUnion's aggregate liability, if any, to Reseller under this Agreement exceed an amount equal to the charges incurred by Reseller under this Agreement during the twelve (12) month period prior to the occurrence of the first event giving rise to any such claim for liability.

Doc. #70-8, at 4.

## II.     STANDARD

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In ruling a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).[2]

### III. DISCUSSION

ODE argues Trans Union's counterclaim should be dismissed because Illinois law does not permit contractual indemnity for first-party claims. The parties agree the RSA is governed by Illinois law. Doc. #70-8, at 8. Under Illinois law, "a contractual indemnification clause may be 'broad enough to encompass claims for both first-party and third-party claims for indemnity.'" *Walgreen Co. v. Panasonic Healthcare Corp. of N. Am.*, No. 17-cv-2120, 2017 WL 6731973. at *4 (N.D. Ill. Dec. 29, 2017) (quoting *Water Tower Realty Co. v. Fordham 25 E. Superior, LLC*, 936 N.E.2d 1127, 1134 (Ill. App. Ct. 2010)) (listing cases). The exact contours of claims covered by an indemnification clause depend on the agreement's language. *Id.* (quotation and citation omitted). "A party wishing to narrow an indemnification clause to third-party damage is obligated to limit the scope of the clause expressly; and absent such express limitation, indemnification clauses may apply to damage suffered by the contracting parties themselves." *Water Tower Realty*, 936 N.E.2d at 1133-34 (citation omitted).

---

[2] Both parties agree the Court may consider the RSA between ODE and Trans Union because the contract is embraced by the pleadings. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cr. 2003) (citation omitted); *see* Fed. R. Civ. P. 12(d).

4

Section III.A of the RSA, quoted in full above, provides ODE "shall indemnify and hold TransUnion harmless from any and all claims, losses and damages, liability and costs…to the extent such claims, damages, liability and costs result directly or indirectly from" any use of a consumer report in violation of applicable law or ODE's breach of its obligations under the RSA. This language does not expressly limit ODE's indemnification obligations to only those damages suffered by third parties. The "any and all claims, losses and damages, liability, and costs…" language is broad enough to cover the first-party claim between contracting parties presented here. Accordingly, the RSA's indemnification clause does not provide a basis for dismissal of the first-party claims at issue.[3]

ODE also argues section I.J of the RSA cannot be read to permit Trans Union's contract claim because, under its reading of the clause, ODE's obligations are limited to only "verify[ing] the identity of End Users who will obtain consumer reports…." This section states: "Reseller shall comply with all federal, state and local statutes, regulation and rules applicable to it including, without limitation, the FCRA and all the procedures prescribed by TransUnion in the Policy, to verify the identity of End Users who will obtain Consumer Reports to make certain that such End Users are legitimate businesses, have a permissible purpose for obtaining credit reports, and are not Unauthorized Users, as such term is defined in the Policy." ODE argues this language "clearly and unambiguously" shows its sole obligation under the RSA is to verify the identity of End Users.

---

[3] Trans Union also cites to an indemnity provision in an amendment to the RSA agreed to by the parties effective June 1, 2017. The amendment specifically states these "additional terms and conditions" are to be added to the initial RSA. The amendment provides "additional indemnification language" explicitly stating ODE will "defend and indemnify TransUnion from and against third-party claims...." Doc. #86, at 7 (filed under seal). Trans Union argues this language applies to ODE's claims, while ODE argues the amendment supplants the initial RSA indemnification provisions.
It is unclear whether the amendment covers conduct occurring in February 2017 when information about Plaintiff was supplied by ODE and/or Trans Union, or whether the amendment is applicable to this action because Trans Union filed its counterclaim in April 2018. At this time, the Court does not decide the extent to which the amendment's indemnification provision affects this action because Trans Union states a plausible claim under the initial RSA's terms.

The Court disagrees with ODE's narrow reading of its contractual obligations. The phrase "including, without limitation" does not narrow ODE's duties to only the obligations that follow such language. Rather, "including, without limitation" is an "oceanic phrase" signaling any list that follows is an expansion of preceding language rather than a limitation of preceding language. *See Krepps v. NIIT (USA), Inc.*, No. 11C8787, 2014 WL 273780, at *4-5 (N.D. Ill. Jan. 24, 2014) (listing cases). ODE's obligation under the RSA is to comply with applicable laws, which includes compliance (1) with the FCRA, <u>and</u> (2) verification of the identity of End Users as described in the final clause of the sentence.

At this stage of the proceedings, Trans Union states a plausible claim for indemnification for breach of contract. ODE's third-party claim, and Trans Union's counterclaim, each allege the other party is responsible for reporting the allegedly inaccurate "Chg-Off or Repo" code included on Plaintiff's consumer report supplied by ODE. Each party seeks a declaratory judgment establishing it is entitled to recover damages from the other party in the event either party is ultimately found responsible for Plaintiff's damages. The Court does not know which party reported an inaccurate code, or even if an inaccurate code was reported. Nor does the Court know if either party's conduct constitutes gross negligence or willful misconduct such that one party might be entitled to indemnification from the other. Trans Union's counterclaim for indemnification for breach of contract and its declaratory judgment claim state plausible claims upon which it may ultimately be entitled to relief. For now, that ends the Court's inquiry, and the Court denies ODE's motion to dismiss Trans Union's counterclaims.

## IV. CONCLUSION

For the above reasons, the Court denies ODE's motion to dismiss Trans Union's Third-Party Counterclaims. Doc. #79. Furthermore, the Court denies Trans Union's request to file a sur-reply in further support of its motion. Doc. #92.

IT IS SO ORDERED.

DATE: July 26, 2018

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT