IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| JOHN THORNBURG,<br><br>    Plaintiff,<br><br>vs.<br><br>OPEN DEALER EXCHANGE, LLC,<br>d/b/a 700Credit,<br><br>    Defendant/Third-Party Plaintiff/<br>    Counter-Defendant,<br><br>vs.<br><br>TRANS UNION, LLC,<br><br>    Third-Party Defendant/<br>    Counter-Plaintiff. | Case No. 17-06056-CV-SJ-ODS |

## ORDER AND OPINION (1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (2) GRANTING MOTION FOR INJUNCTIVE RELIEF, (3) GRANTING IN PART AND DENYING IN PART MOTION FOR INCENTIVE AWARD AND ATTORNEYS' FEES AND COSTS, AND (4) DISMISSING WITH PREJUDICE PLAINTIFF'S CLAIMS AGAINST OPEN DEALER EXCHANGE

Pending are Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. #136), Plaintiff's Unopposed Motion for Injunctive Relief (Doc. #137), and Plaintiff's Unopposed Motion for Incentive Award and Attorneys' Fees and Costs (Doc. #138). For the following reasons, the Court grants Plaintiff's Motion for Final Approval of Class Action Settlement, grants Plaintiff's Unopposed Motion for Injunctive Relief, and grants in part and denies in part Plaintiff's Unopposed Motion for Incentive Award and Attorneys' Fees and Costs.

On February 6, 2019, the Court entered an order preliminarily approving the class action settlement in this matter ("Preliminary Approval Order"). Doc. #134. The Preliminary Approval Order, *inter alia*, (i) found the terms of the settlement agreement ("the Agreement") entered into by Plaintiff John Thornburg and Defendant Open Dealer Exchange LLC ("Open Dealer") to be fair, reasonable, and adequate to the Settlement

Class, subject to further consideration at the Final Approval Hearing; (ii) determined notice to the Settlement Class was unnecessary; and (iii) scheduled a Final Approval Hearing.

On June 27, 2019, the Court held the Final Approval Hearing.  Counsel for all parties appeared, and provided information and legal arguments related to the pending motions.  At the hearing, the Court expressed concerns about Plaintiff's motion for incentive award and attorneys' fees and costs, and asked for supplemental briefing on the issues raised by the Court.  On July 11, 2019, Plaintiff supplemented his previously filed motion.  Doc. #146.

The Court has considered the Agreement (Doc. #133-2) as well as the parties' briefing, supplemental briefing, exhibits, and oral arguments.  Having done so, the Court finds and orders as follows:

(1)     The definitions set forth in the Agreement are incorporated by reference in this Order.

(2)     The Court has jurisdiction over the subject matter of this lawsuit and personal jurisdiction over all parties in this matter.

(3)     Plaintiff and Open Dealer entered into the Agreement to settle and resolve Plaintiff's and class members' claims against Open Dealer on a nationwide basis.

(4)     The terms of the Agreement and the settlement provided therein are finally approved as fair, reasonable, and adequate to the Settlement.  The consideration provided under the Agreement constitutes reasonable and fair value given in exchange for the release of claims against the Released Parties considering the disputed issues, circumstances, defenses, and the potential risks and likelihood of success of pursuing litigation.  The legal and factual posture of this case and the fact that the Settlement was the result of arms' length negotiations between the parties, including negotiations presided over by Francis X. Neuner, Jr., support these findings.  The Court further finds that these facts, combined with the lack of other indicators of collusion and the Court's observation throughout the litigation, demonstrate there was no collusion, implicit or otherwise, present in reaching the Agreement.

(5)     The Court finds final certification of the Settlement Class is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  First, "the party opposing

the class has acted…on grounds that apply generally to the class, so that final injunctive relief…is appropriate respecting the class as a whole." Fed. R. Civ.P. 23(b)(2). Second, no monetary relief is sought by the Settlement Class, and the remedy obtained by the Settlement Class is indivisible because it accrues to all members of the Settlement Class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (stating "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

(6)	The Court finally certifies the Settlement Class, which is defined as follows:

> All consumers in the United States who were the subject of an Open Dealer consumer report issued between April 4, 2015, and the date this Court enters its Final Judgment and Order, and which included the notation "Chg-Off or Repo."
>
> Excluded from the Settlement Class are (a) Open Dealer Exchange, Trans Union LLC, and their employees; (b) the Judge to whom the matter is assigned; and (c) any member of the Judge's staff or immediate family.

(7)	Any person who previously settled or released all claims covered by this settlement, or any person who previously was paid or received awards through civil or administrative actions for all claims covered by this settlement, or any person who excludes him/herself from the class shall not be a member of the Settlement Class.

(8)	With regard to the settlement in this matter, the Court finds the following:

    a.	The putative members of the Settlement Class are so numerous that joinder of all members was impracticable.

    b.	There are questions of law or fact common to the Settlement Class that predominate over questions affecting only individual members of the Settlement Class.

    c.	The Named Plaintiff's claims are typical of the Settlement Class members' claims.

    d.	The Named Plaintiff and Plaintiff's Counsel fairly and adequately represented and protected the interests of the Settlement Class members.

    e.	Certification of the Settlement Class is an appropriate method for the fair and efficient adjudication of the controversies between the Settlement Class Members and Open Dealer.

(9)     Pursuant to the Agreement, the Class Action Fairness Act of 2005 ("CAFA"), and the Court's Preliminary Approval Order, Open Dealer mailed Notices of Proposed Settlement to the appropriate federal or state officials as set forth in the Declaration filed by Open Dealer.  Doc. #135; Doc. #135-1.

(10)    The Court finally holds notice to Settlement Class members was unnecessary.  According to the United States Supreme Court, Rule 23(b)(2) "provides no opportunity for…class members to opt out, and does not even oblige the District Court to afford them notice of the action."  *Dukes*, 564 U.S. at 362; *see also Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015) (stating, under Rule 23(b)(2), "opt-out rights for class members are deemed unnecessary and are not provided") (citations omitted).  In this case, the settlement only waives the Settlement Class members' rights to (a) pursue injunctive relief in the future against Open Dealer for its use of the "Chg-Off or Repo" notation, and (b) join a class action in the future against Open Dealer for its use of the "Chg-Off or Repo" notation.  *See* Doc. #133-1, at 19; Doc. #133-2, at 12-13.  The settlement does <u>not</u> affect the Settlement Class members' rights to bring subsequent individual claims for actual and/or statutory damages.  *Id.*

(11)    The Court finally appoints John Thornburg as the Class Representative of the Settlement Class.

(12)    Thornburg asks for an incentive award of $15,000.00 to be paid by Open Dealer, which does not object to Thornburg's request.  When deciding whether a service award is warranted, the Court considers "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation."  *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)).

According to Thornburg, he spent much time participating in and litigating this matter, which included his deposition, responding to discovery requests, participating in two mediations, communicating with Class Counsel, and retrieving information.  During the course of litigation, Thornburg had to disclose details of his personal life to Open Dealer and answer difficult questions about his life choices.  Thornburg missed work to prepare for his deposition, be deposed, and attend two out-of-town mediations.

Thornburg's employer purportedly informed him that additional missed work due to participation in the lawsuit would result in the loss of his job. According to Thornburg, the incentive award also serves as consideration for his general release of any and all claims he has or may have against the Released Parties. Unlike the other Settlement Class members, Thornburg is also releasing "any and all claims, individually or on the basis of a class, against Open Dealer...." Doc. #133-2, at 13.[1]

District courts in the Eighth Circuit "regularly grant service awards of $10,000 or greater." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (citing *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming $10,000 service awards to named plaintiffs) and *Zillhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (granting named plaintiffs $15,000 each in service awards)); *see also Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 952 (D. Minn. 2016) (finding an incentive award of $15,000 was appropriate). The Court has considered the relevant factors, and finds an incentive award is warranted, and finds the amount requested by Thornburg is appropriate in these circumstances. Accordingly, Thornbrug's request for an incentive award in the amount of $15,000.00 is granted.

(13)    The Court finally appoints Charles Jason Brown and Jayson Watkins of the law firm of Brown and Watkins LLC as Class Counsel.

(14)    Class Counsel asks the Court to award $1,000,000.00 in attorneys' fees and costs. When a district court has certified a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Agreement authorizes recovery of attorneys' fees and costs, "no greater than one million dollars ($1,000,000)…to be paid by Open Dealer." Doc. #133-2, at 14. As part of the Settlement, Open Dealer agreed "not to oppose the application by Class Counsel, so long as the aggregate request, including all fees, costs, and expenses (including costs related to experts) does not

---

[1] In this lawsuit, Thornburg sought recovery of statutory and actual damages, injunctive relief, punitive damages, costs, and attorneys' fees due to Open Dealer's alleged violations of the Fair Credit Reporting Act when it purportedly provided an inaccurate, misleading, and/or false consumer report to an automobile dealership. Doc. #20, ¶¶ 1-6, 10-48, 59-75.

5

exceed one million dollars ($1,000,000)." *Id.* In addition, the Fair Credit Reporting Act authorizes an award of attorneys' fees and costs. 15 U.S.C. § 1681n(a)(3).

Counsel seeking recovery of fees bears the burden of establishing "a factual basis to support the award." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (citation omitted). Two principal methods are used by courts to award attorneys' fees: lodestar and percentage of the benefit. *Galloway v. The Kan. City Landsmen, LLC*, 833 F.3d 969, 972 (8th Cir. 2016). Class Counsel utilizes the lodestar method, so the Court will do the same. "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) (citation omitted).

To determine the reasonableness of the fee award, courts consider several factors including but not limited to time and labor required; novelty and difficulty of legal questions; required skill to handle the case; preclusion of other employment by the attorney; customary fee for similar work in the community; whether the fee is fixed or contingent; degree of success or results obtained; experience, reputation, and ability of the attorney; undesirability of the case; and awards in similar cases. *See Keli v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (citations omitted); *Phillips v. Mo.*, No. 97-CV-748, 2000 WL 33910092, at *1 (W.D. Mo. Mar. 29, 2000) (citations omitted).

According to the declaration and time records provided to the Court, Brown and Watkins spent 1,480.4 hours and their paralegal spent 50.2 hours litigating this matter. Doc. #138-3; Doc. #141. Class Counsel's time records include the dates on which work was performed, identities of the person performing the work, the amount of time spent on each task, and general descriptions of work performed. The Court is permitted to rely on summaries and affidavits of counsel when considering a request for attorneys' fees. *See In re Genetically Modified Rice Litig.*, 764 F.3d 864, 871 (8th Cir. 2014) (citing *In re Diet Drugs*, 582 F.3d 524, 539 (3d Cir. 2009)).

With regard to the novelty and difficulty of the legal and factual questions, Class Counsel sought and obtained class-wide resolution of potential claims under 15 U.S.C. § 1681e(b). According to other attorneys' declarations submitted in support of the Class

Counsel's motion for attorneys' fees, this particular area of the FCRA is not frequently litigated, and litigating the appropriateness of including "or" in a consumer report is not commonplace. Doc. #146-1; Doc. #146-2. These declarations also indicate FCRA cases, particularly class actions, are complex and risky.

As to preclusion of other employment, Brown and Watkins contend the time they expended in this matter required them to alter their approach to accepting and resolving other matters. Admittedly, they did not keep track of what cases they were precluded from litigating because of this matter. Nevertheless, as the Court noted during the Final Approval Hearing, Class Counsel filed sixty-four other matters in this Court between the time this matter was removed and the Final Approval Hearing. While it appears this matter did not preclude Class Counsel from other employment, the Court notes nearly half of the other matters were pending for less than four months.

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Miller v. Dungan*, 764 F.3d 826, 831 (8th Cir. 2014) (citation omitted). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Id.* (citation omitted). Brown and Watkins argue an hourly rate of $550.00 is reasonable and appropriate. In support of their argument, Class Counsel submitted, among other things, a declaration from a Kansas City attorney, Tracey George, whose hourly rate for collective actions is $575. Doc. #146-3, at 3-4. However, according to her declaration, George litigates "high value collective and class actions" and "primarily" litigates "wage and hour and product liability cases." *Id.* at 3. This declaration does not support Class Counsel's argument that the hourly rate in this particular matter, an FCRA class action (unlike George's cases which include wage and hour and product liability cases), should be $550. Similarly, the declarations provided by two attorneys who do not practice in Missouri regarding their opinions about a reasonable hourly rate for Class Counsel are unconvincing.

This matter was filed in 2017 in the Court's St. Joseph Division, which is located in northwestern Missouri. According to *Missouri Lawyers Weekly*, attorneys' hourly rates in outstate Missouri (specifically, Springfield, Clinton, Fulton, Cape Girardeau, Columbia, Poplar Bluff, and Lake Ozark) ranged from $175 to $300 per hour in 2017.

7

*2017 Billing Rates*, Mo. Law. Wkly., Aug. 7, 2017, at BR2-BR6.  Even when the net is thrown wider to include the Kansas City area, *Missouri Lawyers Weekly* reported the partner-level hourly rate in 2017 ranged from $225 to $550, with the hourly rate averaging at $406.  *Id.* at B2.  The Court also takes note of three recent fee awards Class Counsel received.  Within the last two years, this Court and the District of Kansas found $450 to be a reasonable hourly rate for Class Counsel in other class actions.  *Stallsworth v. Staff Mgmt.*, No. 17-CV-4178 (W.D. Mo. May 8, 2018); *Stallsworth v. Mars Petcare*, No. 17-CV-4180 (W.D. Mo. May 8, 2018); *Bailes v. Lineage Logistics, LLC*, No. 15-2457 (D. Kan. Oct. 20, 2017) (noting "$450 per hour is a reasonable – albeit high – rate" for Class Counsel).

Although Watkins and Brown are experienced in the legal questions raised in this matter, the record does not establish their experiences merit higher rates than typical rates charged by attorneys, regardless of the type of work, in the St. Joseph Division or outstate Missouri.  And they have not demonstrated why they should receive the same hourly rate as the highest hourly rate awarded to a partner in the Kansas City area in 2017.  Moreover, Class Counsel has not shown why they should receive $100 more per hour in this matter than the hourly rate this Court and the District of Kansas recently awarded them in other class actions.  Simply put, Class Counsel have not met their burden of establishing an hourly rate of $550 is reasonable.  Based upon the foregoing analysis, the Court finds a reasonable hourly rate for Class Counsel is $450.  The Court also finds Class Counsel's paralegal's hourly rate of $100 is reasonable.

In addition to multiplying the number of hours expended by the reasonable hourly rate, courts may multiply the lodestar amount by a "multiplier."  *Cohn v. Nelson*, 375 F. Supp. 2d 844, 862 (E.D. Mo. 2005).  "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (citation omitted).  The multiplier may be "based on the risk of recovery and other considerations, to arrive at a reasonable fee."  *Cohn*, 375 F. Supp. 2d at 862 (citing *Blum v. Stenson*, 465 U.S. 886 (1984))*.*

While the settlement does not provide monetary relief to the Settlement Class members, the settlement requires Open Dealer to modify its programming and cease

use of the "Chg-Off or Repo" notation. The roughly two million Settlement Class Members whose consumer reports contained the notation (and countless others who likely would have had the notation on their consumer reports in the future) will receive the benefit of Open Dealer ceasing this practice, and as a result, will not have to experience the issues Thornburg did when the notation showed up on his consumer report. The Court is cognizant that statutory recovery for FCRA violations range from $100 to $1,000, and consumers may also seek recovery of, among other things, actual damages. The fact that Open Dealer will no longer use the "Chg-Off or Repo" notation prevents the inevitable future harm and lawsuits that would have occurred had Open Dealer continued to use this notation. Thus, the degree of success obtained in this matter is unquestionable.

In addition, Class Counsel took this matter on a contingency fee basis, and in doing so, assumed considerable risk, including the possibility of no recovery. That risk arguably increased and the litigation became more complicated when Open Dealer filed a Third-Party Complaint against TransUnion, which in turn filed counterclaims against Open Dealer. For the foregoing reasons, the Court finds a multiplier of 1.3 is appropriate and justified. Accordingly, the Court awards attorneys' fees in the amount of $872,560.00 to Class Counsel.[2]

Finally, Class Counsel seeks an award of $19,882.32 in nontaxable costs. The Court grants Class Counsel's request for an award of these costs.

(15) Pursuant to the Agreement, Open Dealer agreed to modify its Consumer Report production system to remove any and all uses of the "Chg-Off or Repo" Notation, as that term is defined in § 2.13 of the Settlement Agreement. Open Dealer Exchange also agreed to implement these changes by no later than thirty days from the date that

---

[2] The Court arrived at this amount as follows:

```
1,480.4 attorney hours x $450 = $666,180.00
   50.2 paralegal hours x $100 = $   5,020.00
                                 $671,200.00
                                 x       1.3
                                 $872,560.00
```

this Order is issued.  The Court grants the parties' unopposed motion for injunctive relief, and orders as follows:

      a.     Open Dealer shall make all necessary changes to the programming underlying its Consumer Report production system to remove all use of the "Chg-Off or Repo" Notation as that term is defined in § 2.13 of the Settlement Agreement.

      b.     Open Dealer shall complete these changes by no later than thirty days after this Order is entered, after which Open Dealer Exchange shall be enjoined from any future use of the "Chg-Off or Repo" Notation.

(16)   Without affecting the finality of this Order, this Court hereby retains continuing jurisdiction as to all matters relating to administration, consummation, implementation, enforcement, and interpretation of the Agreement and this Order, and for any other necessary purpose all matters ancillary thereto.

(17)   Plaintiff's claims against Open Dealer are dismissed with prejudice.  Open Dealer's claims against Trans Union, and Trans Union's counter-claims against Open Dealer remain pending.

IT IS SO ORDERED.

|  |  |
|---|---|
| DATE: July 22, 2019 | /s/ Ortrie D. Smith<br>ORTRIE D. SMITH, SENIOR JUDGE<br>UNITED STATES DISTRICT COURT |